Scott, J.
The plaintiff in error was also plaintiff in themriginal action, commenced by him in the court of common pleas of Clark county. In his petition he states, in substance, that he was, in March, 1862, the owner of a small farm, containing about thirty-three acres of land, in Clark county, and that the defendant, Dice, desiring to cheat, deceive, and defraud him, about that time represented to him that he, said Dice, owned two hundred acres of land in Scott county, Illinois, within three miles <?f Meredosia, within seven miles of Winchester, and within a mile and a quarter of the Illinois river ; that one hundred and sixty acres of the tract was good timber-land, and forty acres dry prairie, with a creek running through it, which only overflowed a little on the banks ; and that the whole would make good farming land ; that it was never overflowed by the Illinois river, and was worth $12 per acre; and had been entered seventeen years ago ; and by means of these representations he induced the plaintiff to exchange his Clark county 537] land for said Illinois Hand, and the sum of $250 — to be paid to the plaintiff. That conveyances were made and executed accordingly, by the respective parties ; the defendant paid the said sum of $250, and received possession of the Clark county land. Plaintiff avers that upon going to see the land thus obtained from the defendant he found his said representations to be wholly untrue; that the land was situated not less than ten miles from Winchester and about twenty-one miles from Meredosia; that it was all overflowed with water to the, depth of from five to twenty feet, had no valuable timber upon it, and was utterly woi’thless and unfit for cultivation, though defendant knew at the time of the trade that plaintiff expected to occupy it for farming purposes. The plaintiff further *538 states that, upon discovering these facts, he tendered to the defendant the money received from him and a deed of quitclaim for said Illinois land, and requested the defendant to reconvey to him said Clark county land, which the defendant refused to do. Plaintiff thereupon bringing said money and said deed of quitclaim intfl court, asks a rescission of the contract between the parties, and that the defendant be adjudged to reconvey to him the said farm in Clark county, and for other relief.
The defendant, Dice, by answer and amended answer, admits the exchange of lands stated in the petition, and upon the terms therein set out, but denies all false and fraudulent representations charged in the petition. He states that he had never seen the Illinois land, and had no personal knowledge of its location, character, or quality; that he obtained it in exchange for other property worth over $900, without any knowledge or information as to its value or quality, except what he derived from a certain letter written and addressed by one Samuel Beal to one James M. White, and dated July 26, 1861, which purports to describe said lands. He admits that he showed this letter to the plaintiff during the negotiations for exchange of lands, but avers that he told the plaintiff at the time that he knew nothing personally about the land, and would not be responsible for the description contained in said letter, as it might not be true; that he informed the plaintiff where the writer of the letter ^resided, and advised the [588 plaintiff to go and see the writer and get the necessary information from him, or to go and see the land for himself; that he wholly refused to make any representations whatever in regard to the quality of the land or its relative locality, and informed the plaintiff that if he traded for the land, he must do so at his own risk ; and that the contract of exchange was entered into and consummated upon that distinct understanding, and in entire good faith on defendant’s part. He also denies, upon information and belief, that the Illinois land is covered with water, and worthless, as stated in the petition. A copy of the letter referred to in the answer is appended thereto, and the land is therein described as being of a very rich quality, partly prairie land, but most of it well timbered with oak, hickory, linn, hackberry, etc., with a creek, called Walnut creek, running through it, and as being located, with reference to neighboring towns, as stated in the petition.
The averments of this answer were traversed by a reply, and *539 the cause was tried in the district court upon the evidence adduced by the respective parties. The court found the equity of the case to be with the defendant, and dismissed the plaintiff’s petition at his costs. The plaintiff moved the court to set aside its finding in the case, and grant him a new trial, on the ground that the finding and judgment of the court were against the law and the evidence in the case. This motion was overruled, and a bill of exceptions was allowed, which sets out all the evidence offered on the trial.
The plaintiff here seeks to inverse the judgment of the court below, on the ground of error in the finding of the court upon the evidence, and in the overruling of his motion for a new trial.
There was in this case no special finding of facts by the court nor was any such finding asked for by either party. Ag to the most of the facts put in issue by the pleadings, the evidence adduced by the parties upon the trial was quite conflicting; and if the facts testified to by the defendant’s witnesses would support and justify the finding and judgment of the court as to the equity of 539] the case, there was clearly *no such preponderance in the conflicting evidence offered by the plaintiff as would require or justify a reversal of the judgment.
As to the actual character and value of the Illinois land, which was conveyed to the plaintiff by the defendant, Dice, a deposition of a witness residing in the neighborhood of the land, was read in evidence on the trial, by the plaintiff, from which it appears that the land in question was a part of the “ swamp lands” of that state, and of a low grade, such as had generally been entered at from ten to twenty-five cents per acre; that no part of it was well timbered; that the timber on it was water or pin oak, and swamp elm, of little value ; that no part of it was dry prairie; that it was all subject to be overflowed by the Illinois river and by Walnut and Plum creeks; and that there was water on the land for two-thirds of the year, from one to fifteen feet in depth; that it was unfit for farming purposes of any kind; that it was entered in 1855, and was worth, in April, 1862, not more than five cents per acre; and that it was sixteen miles distant from Meredosia, and eleven miles from Winchester. No evidence was offered on this subject by the defendant.
The plaintiff also read in evidence the letter of Samuel’Beal, addressed to James M. White, which is appended to, the answer of defendant, Dice, and which was exhibited by him to the plaintiff during the negotiations for an exchange of lands. Beal was not *540 produced as a witness by either party, nor was there any evidence explanatory of the circumstances under which his letter was written.
The defendant testified in his own behalf, that he had never seen the Illinois land, nor been within one hundred miles of it; that he obtained the land in a trade from James M. White, giving in exchange for it property worth about #1,000; that he had no knowledge or information respecting the land except what he derived from the Beal letter; that he so told the plaintiff in the negotiations which led to the contract of exchange; that he advised the plaintiff to go and see the land before trading for it; that he advised him to go and see Beal, the writer of the letter, telling him where he lived, in Greene county, not half a day’s ride from Springfield; that he told *the plaintiff he could give him no description of the [540 land, and would not bo responsible for the description given in the Beal letter, nor for the character of the writer; and that if the plaintiff took the land, he must do so entirely at his own risk, as the defendant did not know but it might be five feet under water ; that he withheld from the plaintiff no information in his possession in respect to the land, and that the trade was made with the distinct understanding that the plaintiff must take the land at his own risk.
The defendant also called a number of witnesses, whose testimony tended strongly to corroborate his own.
G. Icenbarger testified that after the trade between the parties the plaintiff told him he had traded his farm for a piece of Illinois land, and was going out to see whether he had made his fortune, or had got cheated; that he had never seen the land, and had traded at his own risk, and would have to stand it; said he thought it was good land.
Mrs. Weaver testified: “ I saw Mr. Crist soon after he had traded; it was the same day, or the next day after. He told me that he had traded his farm off for a piece of Illinois land. He said he had traded ‘ unsight unseenand if he had made a bad trade he would have to stand it; that if the land was good he had done well; said he had not taken Dice’s word for it altogether, but had been to see the man who had entered it, and he had told him it was good land.”
John NaveHeard Crist say that he had traded for the land “ unsight unseen,” and must stand by it if the land was five feet under water; said he traded for it at his own risk.
*541 James Bobinson: Heard the parties talk about a land trade. Crist said he had made a trade, and was going out to see whether he had made his fortune or got cheated; if cheated, he would have to stand up. He said he had made inquiries of Dice, and Dice said he knew no more about the land than he (Crist) did. He asked Dice if it was a certain kind of timber; Dice replied that he would have to take it for good or bad if he took it.
James S. Christie testified that the parties came to his office to get a contract drawn up between them. They said they had been 541] trading land. Crist said he had traded for a Apiece of Illinois land without seeing it, and that if he was cheated he would have to stand it, good or bad. “ I told him that I thought that was a poor way of trading; told him that Mr. Crothers, a trading man, said he was always willing to trade for land without seeing, if he had the warranty of a good man. Dice said he would make no warranty; that he had never seen the land, and that he had bought it on the strength of a letter, written by a man in Greene county.’-’
Several other witnesses testified to conversations occurring between the parties during their negotiations, in which they heard the defendant tell the plaintiff that he had never seen the Illinois land, but had bought it on the strength of the description contained in the Beal letter; and advised him to go and see the writer of that letter (telling him where he lived), or else to go and seethe land for himself; that Dice said positively that he would not vouch for the description of the land; that he said he would neither recommend the letter nor the land.
There was no evidence in the case which would have justified the court in finding that Dice had knowledge of the actual character of the Illinois land, or had any reason to believe the description given of it in the Beal letter to be false; or that there was any want of good faith on his part in any of his negotiations with the plaintiff on the subject of this land.
And the question, then, is whether upon the state of facts shown by the evidence for the defendant, relief should have been granted to the plaintiff.
The plaintiff was aware that the quality of the land was unknown to the defendant as well as to himself; the propriety of making inquiries, and the mean's by which full information might be obtained, were suggested to him, yet he imprudently neglected to avail himself of them, and agreed to take the land at his own *542 risk. It is no just ground of complaint that the letter purporting to describe the land was exhibited to him, unless there was some suppression of the truth or suggestion of falsehood in respect to it. He knew that the defendant would not vouch for the character of the land, or its agreement in any respect with the description contained *in that letter. For the falsity of that description, if [542 it be false, the defendant can not be held responsible, contrary to the express understanding of the parties. The plaintiff was fully put upon inquiry, and the hardship of which he complains is the result of his own negligence and imprudence. “ Courts of equity give relief to the vigilant, not to the negligent. They refuse their aid to those who hy their own negligence, and by that alone, have incurred a loss.” 1 Story’s Eq. Jur., sec. 146, and notes.
The supposed mistake of facts in this case was but a contingency which the parties foresaw as liable to arise from their mutual want of personal knowledge of the land; this contingency was in their contemplation as the basis, in part, of their contract, and was provided for by their agreement, and is therefore no ground for rescission. “Where the fact is equally unknown to both parties, or where each has equal and adequate means of information, or where the fact is doubtful from its own nature, in every such case, if the parties have acted with entire good faith, a court of equity will not interpose. . . . This ride will apply to all cases of sale of real estate, or personal estate, made in good faith, where material circumstances, affecting the value, are equally unknown to both parties.” 1 Story’s Eq. Jur., sec. 150. No implied obligation inconsistent with the actual agreement can arise from the fact that the defendant knew that the plaintiff expected to occupy the land for farming purposes; for “ expressum facit cessare taciturn.”
The plaintiff has made and fully executed an imprudent and unfortunate contract; but we think there is no recognized principle upon which a court of equity can grant the relief which he seeks, and are therefore constrained to say that the judgment of the district court must be affirmed.
Day, C. J., and Brinkerhoff, Welch, and White, JJ., concurred.